# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

THE NATHAN CUMMINGS FOUNDATION,
INC.

                              Plaintiff,

          v.                                        Case No. 1:26-CV-00501 (ACR)

AXON ENTERPRISE, INC.

                              Defendant.

## AXON'S MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF

Jeffrey A. Rosen (D.C. Bar 367245)
Cravath, Swaine & Moore LLP
1601 K Street NW
Washington, D.C. 20006
Tel: (202) 869-7700
Email: jrosen@cravath.com

Antony L. Ryan (*pro hac vice pending*)
Lauren M. Rosenberg (*pro hac vice pending*)
Cravath, Swaine & Moore LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel: (212) 474-1000
Email: aryan@cravath.com
Email: lrosenberg@cravath.com

*Attorneys for Axon Enterprise, Inc.*

February 25, 2026

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ....................................................................................................3

    I.      GOVERNING REGULATORY FRAMEWORK................................................3

    II.     FACTUAL AND PROCEDURAL BACKGROUND.........................................10

LEGAL STANDARD..............................................................................................11

ARGUMENT .......................................................................................................12

    I.      AXON LAWFULLY EXCLUDED THE PROPOSAL UNDER RULE
           14a-8(i)(7) ON MICROMANAGEMENT GROUNDS. .......................................12

          A.     The Court Owes Deference to the SEC's Interpretation of
                "Ordinary Business Operations" in Rule 14a-8(i)(7)................................13

          B.     Plaintiff's Proposal Satisfies the SEC's Standard for
                Micromanagement. ...............................................................................16

    II.     THE REMAINING FACTORS FOR INJUNCTIVE RELIEF WEIGH
           AGAINST AN INJUNCTION. .....................................................................26

          A.     Plaintiff Will Not Suffer Irreparable Harm.................................................26

          B.     The Balance of Equities Weighs in Axon's Favor....................................28

          C.     The Public Interest Does Not Support an Injunction. ...............................28

CONCLUSION....................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Sandoval*, 532 U.S. 275 (2001)...........................................................................12, 20

*Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*,
   821 F. Supp. 877 (S.D.N.Y. 1993) ...............................................................................19, 20, 21

*Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531 (1987)....................................................12

*Apache Corp. v. N.Y.C. Emps.' Ret. Sys.*, 621 F. Supp. 2d 444 (S.D. Tex. 2008)..................19, 21

*\*Auer v. Robbins*, 519 U.S. 452 (1997) ..................................................................................13

*Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945) ..................................................13

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006)......................26

*Citizens United v. FEC*, 558 U.S. 310 (2010)..........................................................................23

*Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972 (D.C. Cir. 1985)....................................29

*Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288 (D.C. Cir. 2009) .........................................12

*E.M. v. Shady Grove Reprod. Sci. Ctr. P.C.*, 2020 WL 7264048 (D.D.C. Dec. 10, 2020) ...........28

*First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765 (1978).......................................................23

*GMS Mine Repair v. Fed. Mine Safety & Health Rev. Comm'n*, 72 F.4th 1314
   (D.C. Cir. 2023) ...................................................................................................................13, 14

*Greatness v. FEC*, 831 F.3d 500 (D.C. Cir. 2016) ..................................................................28

*Grimes v. Centerior Energy Corp.*, 909 F.2d 529 (D.C. Cir. 1990) ..........................................14

*Gryl ex rel. Shire Pharms. Grp. PLC v. Shire Pharms. Grp. PLC*, 298 F.3d 136
   (2d Cir. 2002).......................................................................................................................16

*J.I. Case Co. v. Borak*, 377 U.S. 426 (1964) .........................................................................12

*\*Kisor v. Wilkie*, 588 U.S. 558 (2019).............................................................................13, 14, 15

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) .................................................14, 15

*MediNatura, Inc. v. FDA*, 998 F.3d 931 (D.C. Cir. 2021).......................................................12

*N.Y.C. Employees' Retirement System v. Dole Food Co.,* 795 F. Supp. 95 (S.D.N.Y.),
    *dismissed as moot*, 969 F.2d 1430 (2d Cir. 1992) ...................................................27

*Nat'l Ass'n of Mfrs. v. Taylor*, 549 F. Supp. 2d 68 (D.D.C. 2008)...............................29

*Orton Motor, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 884 F.3d 1205 (D.C. Cir. 2018)........15

*Rodriguez v. United States*, 480 U.S. 522 (1987) (per curiam) ....................................25

**Roosevelt v. E.I. DuPont de Nemours & Co.*, 958 F.2d 416 (D.C. Cir. 1992) ................... *passim*

*Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205 (D.C. Cir. 1989) ...............................27

**Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) ...............................................13, 15, 16

*Spicer v. Biden*, 575 F. Supp. 3d 93 (D.D.C. 2021)...............................................26

*Tosdal v. Nw. Corp.*, 440 F. Supp. 3d 1186 (D. Mont. 2020).......................................15

**Trinity Wall St. v. Wal-Mart Stores, Inc.*, 792 F.3d 323 (3d Cir. 2015) ........................... *passim*

*Union Neighbors United, Inc. v. Jewell*, 831 F.3d 564 (D.C. Cir. 2016) ......................15

*United States v. James*, 135 F.4th 1329 (11th Cir. 2025) ......................................14

*United States v. Prather*, 138 F.4th 963 (6th Cir. 2025)........................................14

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) ..........................................29

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .....................................11, 29

*Wisc. Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985) ........................................26

**Statutes & Rules**

*Exchange Act § 14(a), 15 U.S.C. § 78n(a) ....................................................3, 12, 26

Exchange Act § 23(a), 15 U.S.C. § 78w(a) ........................................................4

*Rule 14a-8, 17 C.F.R. § 240.14a-8 ......................................................... *passim*

Rule 14a-9, 17 C.F.R. § 240.14a-9 ..............................................................19

**Securities Exchange Act Releases**

*SEC, *Adoption of Amendments Relating to Proposals by Security Holders*, Exchange
    Act Release No. 12999, 41 Fed. Reg. 52,994 (Nov. 22, 1976) ................................6, 14, 22, 26

SEC, *Amendments to Rule 14a-8 Under the Securities Exchange Act of 1934 Relating to Proposals by Security Holders*, Exchange Act Release No. 20091, 48 Fed. Reg. 38,218 (Aug. 23, 1983) ...................................................................................................24

\*SEC, *Amendments to Rules on Shareholder Proposals*, Exchange Act Release No. 40018, 63 Fed. Reg. 29,106 (May 28, 1998) ................................................. *passim*

SEC, *Procedural Requirements and Resubmission Thresholds Under Exchange Act Rule 14a-8*, Exchange Act Release No. 89964, 85 Fed. Reg. 70,240 (Nov. 4, 2020) .................4, 30

## SEC Staff Legal Bulletins

SEC Staff Legal Bulletin No. 14F (Oct. 18, 2011) .......................................................19

\*SEC Staff Legal Bulletin No. 14J (Oct. 23, 2018) ............................................. *passim*

\*SEC Staff Legal Bulletin No. 14K (Oct. 16, 2019) .................................................2, 7, 8

SEC Staff Legal Bulletin No. 14L (Nov. 3, 2021) ..........................................................8

\*SEC Staff Legal Bulletin No. 14M (Feb. 12, 2025) .................................................8, 16

## No-Action Letters

*Air Products and Chemicals, Inc.,* 2024 WL 4250617 (Nov. 29, 2024) ......................................25

*Am. Int'l Grp. (AIG)*, 2004 WL 346068 (Feb. 19, 2004) ..............................................25

*Bank of Am.*, 2012 WL 71855 (Feb. 29, 2012) ..........................................................25

*Chubb Corp.*, 2004 WL 224491 (Jan. 27, 2004) .........................................................25

*Citigroup, Inc.*, 2004 WL 224478 (Jan. 27, 2004) ......................................................25

*EQT Corp.*, 2012 WL 6591778 (Jan. 23, 2013) ..........................................................25

## Other Authorities

Axon Enters., Inc., 2025 Proxy Statement (Apr. 16, 2025), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001069183/00010691832500005 5/axon-20250416.htm ..........................................................................................27

Commissioner Elad L. Roisman, *Statement on Procedural Requirements and Resubmission Thresholds under Exchange Act Rule 14a-8* (Sept. 23, 2020), https://www.sec.gov/newsroom/speeches-statements/roisman-14a8-2020-09-23 .................27

Elizabeth A. Ising et al., *Shareholder Proposal Developments During the 2025 Proxy Season*, Harv. L. Sch. F. on Corp. Gov. (Aug. 30, 2025), https://corpgov.law.harvard.edu/2025/08/30/shareholder-proposal-developments-during-the-2025-proxy-season/ .........................................................................................4, 5

Matteo Tonello, *The Evolving Landscape of DEI Shareholder Proposals*, Harv. L. Sch. F. on Corp. Gov. (Apr. 25, 2025), https://corpgov.law. harvard.edu/2025/04/25/the-evolving-landscape-of-dei-shareholder-proposals/ ....................................................30

SEC Chair Mary Jo White, *The Importance of Independence* (Oct. 3, 2013), https://www.sec.gov/newsroom/speeches-statements/spch100113mjw ..................................26

SEC Chairman Paul S. Atkins, *Keynote Address at the John L. Weinberg Center for Corporate Governance's 25th Anniversary Gala* (Oct. 9, 2025), https://www.sec.gov/newsroom/ speeches-statements/atkins-10092025-keynote-address-john-l-weinberg-center-corporate-governances-25th-anniversary-gal .................9, 30

SEC Div. of Corp. Fin., *Statement Regarding the Division of Corporation Finance's Role in the Exchange Act Rule 14a-8 Process for the Current Proxy Season*, SEC (Nov. 17, 2025), https://www.sec.gov/newsroom/speeches-statements/statement-regarding-division-corporation-finances-role-exchange-act-rule-14a-8-process-current-proxy-season .....................................................................................................................1, 9

SEC, *Division of Corporation Finance*, https://www.sec.gov/about/divisions-offices/division-corporation-finance ....................................................................................7

SEC, *Staff Legal Bulletins*, https://www.sec.gov/rules-regulations/staff-guidance/staff-legal-bulletins .............................................................................................................7

Walmart, Inc., 2025 Definitive Proxy Statement (Apr. 24, 2025), https://stock.walmart.com/sec-filings/all-sec-filings/content/0000104169-25-000055/wmt-20250424.htm .........................................................................................5

Defendant Axon Enterprise, Inc. ("Axon") respectfully submits this Memorandum of Law in Opposition to Plaintiff Nathan Cummings Foundation, Inc.'s Motion for Injunctive Relief ("Motion" or "Mot.").

## PRELIMINARY STATEMENT

This is a case about whether the U.S. Securities and Exchange Commission's ("SEC") rules authorize a company to exclude a shareholder proposal from the company's proxy materials because the proposal seeks to micromanage the company's ordinary business operations. Axon's exclusion of Plaintiff's proposal was warranted on those grounds.

The SEC's Exchange Act Rule 14a-8 permits a company to exclude a shareholder's proposal from the company's proxy materials if that proposal "deals with a matter relating to the company's ordinary business operations." 17 C.F.R. § 240.14a-8(i)(7). There are two independent reasons for which a proposal may be excluded relating to "ordinary business operations." Either a proposal is excludable because its *subject matter* does not involve a significant social policy—it addresses "tasks [that] are so fundamental to management's ability to run a company on a day-to-day basis that they could not, as a practical matter, be subject to direct shareholder oversight." SEC, *Amendments to Rules on Shareholder Proposals*, Exchange Act Release No. 40018, 63 Fed. Reg. 29,106, 29,108 (May 28, 1998) ("1998 Release"). Or a proposal is excludable because it seeks to *micromanage* the company—it "prob[es] too deeply into matters of a complex nature upon which shareholders, as a group, would not be in a position to make an informed judgment." *Id.*

Plaintiff is a purported Axon shareholder who submitted a proposal ("Proposal") for inclusion in the proxy materials for Axon's 2026 annual shareholder meeting. The Proposal would require Axon to report policies and procedures for any "contributions and expenditures (direct and indirect)," to "participate or intervene in any campaign on behalf of (or in opposition to) any

candidate for public office," or "influence the general public" "with respect to an election or referendum." ECF No. 2-3, at 2. The Proposal also would require Axon to collect, compile, present, and publish an annual report with a sprawling matrix of line-item disclosure of all contributions, including the "identity of the recipient" and the "amount paid to each." *Id*. The Proposal specifies the precise type of disclosure required and includes a sweeping requirement to disclose such information, regardless of whether a contribution is "monetary" or "non-monetary"; whether a "contribution" or an "expenditure"; whether sourced from "corporate funds or corporate assets"; whether "direct or indirect"; whether to "political candidates, parties, or organizations"; whether on behalf of "federal, state, or local candidates"; and whether to a candidate in an election or to "influence the general public, or any segment thereof, with respect to an election or referendum." *Id*. It also specifies the inclusion of any contributions to "[t]rade [a]ssociations" and "501(c)(4) social welfare organizations." *Id*. And Axon would have been required to repeat the process every year. *Id.*

Axon properly determined that the Proposal was excludable under Rule 14a-8(i)(7) because it sought to micromanage the company. The Proposal requires "intricate detail" and "seeks to impose specific time-frames or methods for implementing complex policies." SEC Staff Legal Bulletin No. 14J § C.2 (Oct. 23, 2018) ("Staff Legal Bulletin 14J") (quoting 1998 Release, 63 Fed. Reg. at 29,108). It also "prescribes specific actions that the company's management or the board must undertake without affording them sufficient flexibility or discretion in addressing the complex matter presented by the proposal." SEC Staff Legal Bulletin No. 14K § B.4 (Oct. 16, 2019) ("Staff Legal Bulletin 14K"). The SEC's interpretation of its own Rule 14a-8(i)(7), to which the Court owes deference, demonstrates that the Proposal crosses the micromanagement line and then some.

Plaintiff, on the other hand, devotes the majority of its brief to addressing the subject matter of the Proposal. But that is a separate and independent basis for exclusion under Rule 14a-8(i)(7) and is inapplicable here. Indeed, Axon justified its exclusion on grounds of micromanagement, not subject matter. *See* ECF No. 2-4, at 2. The SEC has made clear that proposals that involve proper subject matter may still "result in exclusion on micromanagement grounds" due to "the manner in which a proposal seeks to address an issue." Staff Legal Bulletin 14J § C.2. Plaintiff asks for an injunction yet fails to cite a single case finding that a company improperly sought to exclude a shareholder proposal on micromanagement grounds. (*See* Mot. at 16-22.) Thus, citing no applicable micromanagement authority in support of its argument, Plaintiff fails to grapple with the relevant grounds for exclusion. Moreover, the no-action letters to which Plaintiff refers not only are entitled to no deference, but also suffer from a common flaw: they predate Staff Legal Bulletins 14J and 14K and therefore did not apply the SEC's recent authority interpreting Rule 14a-8(i)(7)'s micromanagement exclusion.

Plaintiff cannot show a likelihood of success on the merits, as Axon properly excluded the Proposal under Rule 14a-8(i)(7). Should the Court proceed beyond the merits, Plaintiff has also failed to carry its burden on the remaining equitable prongs. Accordingly, the Court should deny the Motion for Injunctive Relief and, with no other cause of action or remedy left to consider, dismiss the complaint with prejudice.

## BACKGROUND

### I.    Governing Regulatory Framework

Section 14(a) of the Exchange Act authorizes the SEC to regulate the proxy process and public companies' solicitation of proxies from their shareholders. *See* 15 U.S.C. § 78n(a). Rule 14a-8 governs the process by which a shareholder may request that a company include the shareholder's proposal in the company's proxy materials, at no cost to the shareholder. 17 C.F.R.

§ 240.14a-8; Exchange Act § 23(a), 15 U.S.C. § 78w(a) (authorizing the SEC to enact regulations to implement the Exchange Act).  Alternatively, shareholders may also submit proposals by attending meetings in person or paying to issue a separate proxy statement.  *See Trinity Wall St. v. Wal-Mart Stores, Inc.*, 792 F.3d 323, 335-36 (3d Cir. 2015).  To satisfy Rule 14a-8, the shareholder must fulfill certain eligibility and procedural requirements.  *See* 17 C.F.R. § 240.14a-8(b)-(f).  Rule 14a-8(i) also specifies grounds on which a company may exclude a proposal.  *Id.* § 240.14a-8(i). If a shareholder fails to satisfy the eligibility or procedural requirements, or if a proposal falls within one of the prohibited categories, a company may exclude a shareholder proposal from its proxy materials.  *Id.* § 240.14a-8(f), (i).

A public company's ability to exclude a shareholder proposal is important, given that shareholder proposals can sometimes result in significant expense to the company.  The barriers to submission are low, permitting proposals from shareholders who have held a mere minimum of $2,000 in securities for three years, *see id.* § 240.14a-8(b)(i)(A), yet "the costs of processing, analyzing, and voting on the proponent's proposal largely are borne by the company and its shareholders" as a whole, SEC, *Procedural Requirements and Resubmission Thresholds Under Exchange Act Rule 14a-8*, Exchange Act Release No. 89964, 85 Fed. Reg. 70,240, 70,240 (Nov. 4, 2020) ("2020 Release").  Further, a select few shareholders make frequent use of the process by submitting the same proposal year after year to different companies.  And once submitted, only a small percentage of proposals ever make it to a vote and receive majority support—six percent in the 2025 proxy voting season.[1]  Finally, many recent shareholder proposals are increasingly

---

[1] *See* Elizabeth A. Ising et al., *Shareholder Proposal Developments During the 2025 Proxy Season*, Harv. L. Sch. F. on Corp. Gov. (Aug. 30, 2025), https://corpgov.law.harvard.edu/2025/08/30/shareholder-proposal-developments-during-the-2025-proxy-season/.

political and attempt to advance policy priorities on both the left and the right, resulting in further controversy and cost.[2]

The ground for exclusion relevant to this case, Rule 14a-8(i)(7), permits a company to exclude a proposal "[i]f the proposal deals with a matter relating to the company's ordinary business operations." *Id.* § 240.14a-8(i)(7). The SEC has indicated—in its release explaining the 1998 amendments to Rule 14a-8—that "the principal considerations" of the 'ordinary business' exclusion" aim to "confine the resolution of ordinary business problems to management and the board of directors, since it is impracticable for shareholders to decide how to solve such problems at an annual shareholders meeting." 1998 Release, 63 Fed. Reg. at 29,108. Importantly, the term "ordinary business" "refers to matters that are not necessarily 'ordinary' in the common meaning of the word, and is rooted in the corporate law concept providing management with flexibility in directing certain core matters involving the company's business and operations." *Id.* at 29,107.

"The policy underlying the ordinary business exclusion rests on two central considerations." *Id.* at 29,108. "The first relates to the subject matter of the proposal. Certain tasks are so fundamental to management's ability to run a company on a day-to-day basis that they could not, as a practical matter, be subject to direct shareholder oversight." *Id.* "The second consideration relates to the degree to which the proposal seeks to 'micro-manage' the company by probing too deeply into matters of a complex nature upon which shareholders, as a group, would not be in a position to make an informed judgment." *Id.*

---

[2] *See, e.g.*, *id.* (noting that "largest subcategory of social proposals was nondiscrimination and diversity-related proposals" and that "anti-ESG proposals made up 58% of" those proposals); Walmart, Inc., 2025 Definitive Proxy Statement 117-21 (Apr. 24, 2025), https://stock.walmart.com/sec-filings/all-sec-filings/content/0000104169-25-000055/wmt-20250424.htm (annual proxy statement included one proposal seeking a "racial equity audit" and another relating to "concerns about DEI and 'wokeness'").

*First*, the subject matter consideration—which is not at issue here—tests whether the proposal should be excluded because it addresses tasks that are "fundamental" to day-to-day management oversight. *Id.* Where, however, proposals related to such topics "focus[] on sufficiently significant social policy issues," they "generally would not be considered to be excludable, because the proposals would transcend the day-to-day business matters and raise policy issues so significant that it would be appropriate for a shareholder vote." *Id.* Thus, for example, whereas proposals addressed merely to the "hiring, promotion, and termination of employees" may be excludable, those concerned with "significant discrimination matters" related to those topics generally may not be excluded. *Id.*

*Second*, the micromanagement inquiry—the only consideration at issue here—evaluates "the degree to which the proposal seeks to 'micro-manage' the company."[3] *Id.* Micromanagement may "come into play in a number of circumstances, such as where the proposal involves intricate detail, or seeks to impose specific time-frames or methods for implementing complex policies." *Id.* This is a "case-by-case" inquiry, which considers "factors such as the nature of the proposal and the circumstances of the company to which it is directed." *Id.* at 29,109.

Staff Legal Bulletins 14J and 14K provide guidance on Rule 14a-8, including the two separate—and independent—bases for exclusion under Rule 14a-8(i)(7)'s ordinary business exclusion. While not legally binding, Staff Legal Bulletins are issued by the SEC's Division of Corporation Finance (the "Division"), the division of the SEC that reviews public company filings and "provides interpretive assistance to companies with respect to SEC rules and forms," and the

---

[3] The micromanagement consideration addresses the concern identified in the SEC's release explaining its 1976 amendments to Rule 14a-8, namely that "shareholders, as a group, would not be qualified to make an informed judgment" on certain "matters of a complex nature." 1998 Release, 63 Fed. Reg. at 29,108 (citing SEC, *Adoption of Amendments Relating to Proposals by Security Holders*, Exchange Act Release No. 12999, 41 Fed. Reg. 52,994 (Nov. 22, 1976)).

Bulletins "represent interpretations and policies followed by the Division . . . on any given matter."[4]  In 2018, the Division emphasized in Staff Legal Bulletin 14J that in the ordinary business operations analysis, "[u]nlike the first consideration, which looks to a proposal's subject matter, the second consideration looks only to the degree to which a proposal seeks to micromanage." Staff Legal Bulletin 14J § C.2.  Thus, proposals that involve proper subject matters may still "result in exclusion on micromanagement grounds" due to "the manner in which a proposal seeks to address an issue."  *Id.*  Further, reiterating the Commission's position that "a proposal may probe too deeply into matters of a complex nature if it '. . . seeks to impose specific time-frames or methods for implementing complex policies,'" the Division advised that this framework applies equally to proposals calling for a study or report.  *Id.* (quoting 1998 Release, 63 Fed. Reg. at 29,108).  Therefore, proposals for "intricately detailed stud[ies] or report[s]," as well as reports "relat[ing] to the imposition or assumption of specific timeframes or methods for implementing complex policies," are properly excludable under Rule 14a-8(i)(7)'s ordinary business operations exception.  *Id.*

In 2019, the Division issued Staff Legal Bulletin 14K and again stressed that the micromanagement inquiry "rests on an evaluation of the manner in which a proposal seeks to address the subject matter raised, rather than the subject matter itself."  Staff Legal Bulletin 14K § B.4.  The Division also offered an illustrative example of the distinction between, on the one hand, permissible proposals that "request that the company consider, discuss the feasibility of, or evaluate the potential for a particular issue" and thereby "defe[r] to management's discretion," and, on the other, excludable proposals that "prescribe[] specific timeframes," "seek[] intricate

---

[4]  SEC, *Division of Corporation Finance*, https://www.sec.gov/about/divisions-offices/division-corporation-finance; SEC, *Staff Legal Bulletins*, https://www.sec.gov/rules-regulations/staff-guidance/staff-legal-bulletins.

detail or impose[] a specific strategy, method, action, outcome or timeline for addressing an issue, thereby supplanting the judgment of management and the board." *Id.* Applying this framework, the Division explained that a proposal seeking annual reporting on greenhouse gas targets was excludable on the basis of micromanagement. *Id.* However, a proposal seeking a report describing if, and how, a company plans to reduce its impact on climate change was not excludable "because it deferred to management's discretion to consider if and how the company plans to reduce its carbon footprint" and permitted "the company to consider the relative benefits and drawbacks of several actions." *Id.* The Division cautioned that "[w]hen a proposal prescribes specific actions that the company's management or the board must undertake without affording them sufficient flexibility or discretion in addressing the complex matter presented by the proposal, the proposal may micromanage the company to such a degree that exclusion of the proposal would be warranted." *Id.* It also made clear that the Proposal must be evaluated "in its entirety" and "not only to the resolved clause." *Id.* "Thus, if a supporting statement modifies or re-focuses the intent of the resolved clause, or effectively requires some action in order to achieve the proposal's central purpose as set forth in the resolved clause, we take that into account in determining whether the proposal seeks to micromanage the company." *Id.*

The Division briefly experimented in 2021 with a new approach to the micromanagement inquiry in Staff Legal Bulletin 14L, which rescinded Staff Legal Bulletins 14J and 14K. *See* SEC Staff Legal Bulletin No. 14L § B.3 (Nov. 3, 2021) ("Staff Legal Bulletin 14L").

Most recently, in February 2025, the Division issued Staff Legal Bulletin 14M, reinstating the micromanagement standard as articulated in Staff Legal Bulletins 14J and 14K and rescinding Staff Legal Bulletin 14L. *See* SEC Staff Legal Bulletin No. 14M §§ A, C.3 (Feb. 12, 2025) ("Staff

Legal Bulletin 14M"). Thus, Staff Legal Bulletin 14M—incorporating Staff Legal Bulletins 14J and 14K—provides the most recent guidance on Rule 14a-8(i)(7).[5]

The SEC's Chairman, Paul S. Atkins, recently called for "a fundamental reassessment of Rule 14a-8" and a reevaluation of "the rule's fundamental premise that shareholders should be able to force companies to solicit for their proposals . . . at little or no expense to the shareholder."[6] Following this speech, the Division adopted a different procedure for shareholder proposals this proxy season. For many years, the Division reviewed shareholder proposals and, if appropriate, issued a no-action letter supporting the company's decision to exclude a shareholder proposal. *See id.* § 240.14a-8(j)-(k); *see also Trinity Wall St.*, 792 F.3d at 336. In November 2025, the Division announced that this year, "due to current resource and timing considerations," it would not substantively respond to no-action requests to exclude shareholder proposals, with one exception not relevant here.[7] Instead, if a company provides a representation that it has a "reasonable basis" to exclude the proposal, the Division will issue a letter indicating that, based on that representation, the Division will not object to the exclusion.[8]

---

[5] The Staff Legal Bulletins are available at https://www.sec.gov/rules-regulations/staff-guidance/staff-legal-bulletins/shareholder-proposals-staff-legal-bulletin-no-14j-cf; https://www.sec.gov/rules-regulations/staff-guidance/staff-legal-bulletins/staff-legal-bulletin-14k-shareholder-proposals; and https://www.sec.gov/about/shareholder-proposals-staff-legal-bulletin-no-14m-cf.

[6] SEC Chairman Paul S. Atkins, *Keynote Address at the John L. Weinberg Center for Corporate Governance's 25th Anniversary Gala* (Oct. 9, 2025), https://www.sec.gov/newsroom/speeches-statements/atkins-10092025-keynote-address-john-l-weinberg-center-corporate-governances-25th-anniversary-gala.

[7] SEC Div. of Corp. Fin., *Statement Regarding the Division of Corporation Finance's Role in the Exchange Act Rule 14a-8 Process for the Current Proxy Season*, SEC (Nov. 17, 2025), https://www.sec.gov/newsroom/speeches-statements/statement-regarding-division-corporation-finances-role-exchange-act-rule-14a-8-process-current-proxy-season.

[8] *Id.*

II.     **Factual and Procedural Background**

Plaintiff submitted its Proposal to Axon on November 26, 2025.  The Proposal reads:

Resolved, that the shareholders of Axon Enterprise, Inc. . . . hereby request that the Company provide a report, updated annually, disclosing the Company's:

1.      Policies and procedures for making, with corporate funds or assets, contributions and expenditures (direct or indirect) to (a) participate or intervene in any campaign on behalf of (or in opposition to) any candidate for public office, or (b) influence the general public, or any segment thereof, with respect to an election or referendum.

2.      Monetary and non-monetary contributions and expenditures (direct and indirect) used in the manner described in section 1 above, including the identity of the recipient as well as the amount paid to each.

The report shall be presented to the board of directors or relevant board committee and posted on the Company's website.  This proposal does not encompass lobbying spending.

ECF No. 2-3, at 2.

Plaintiff also included a supporting statement, which provides additional detail regarding the Proposal's scope.  Plaintiff explained that the Proposal requests that Axon "disclose all its electoral spending," which encompasses "any activity considered an intervention in a political campaign under the Internal Revenue Code, such as direct and indirect contributions to political candidates, parties, or organizations, and independent expenditures or electioneering communications on behalf of federal, state, or local candidates."  *Id.*  The Proposal includes payments to trade associations, Super PACs, 527 committees, and 501(c)(4) social welfare organizations, when any of those entities in turn make political contributions.  *Id*.

On January 26, 2026, Axon notified the SEC of its decision to exclude the Proposal.  Axon specified that the "Basis for Exclusion" is that the Proposal "seeks to micromanage the Company." ECF No. 2-4, at 2.  Axon explained that the Proposal "probes too deeply into complex, day-to-day disclosure judgments and prescribes both the scope and cadence of reporting, thereby supplanting

the discretion of management and the Board," and noted that Axon already maintains and enforces a policy framework that governs political contributions.[9] *Id.* at 3. Axon's objection further stated that "[t]he request contains no limiting principles, covers a wide variety of entities and activities" and "dictates the internal review and publication cadence." *Id.* Axon also illustrated "the litany of discrete pieces of information required by the Proposal" in a table attached as an exhibit to the letter. *Id.* at 3, 11-12. On January 27, 2026, Plaintiff provided a response to the SEC. ECF No. 2-5. Following its new policy for this proxy season on no-action letters, the Division issued a no-action letter on February 10, 2026, stating that "[b]ased solely on [Axon's] representation, we will not object if the Company excludes the Proposal from its proxy materials." ECF No. 2-6, at 1.

On February 17, 2026, Plaintiff initiated this action and filed the instant Motion for Injunctive Relief, requesting that the Court issue a ruling "sufficiently in advance" of April 16, 2026, the day Plaintiff expects Axon to file its definitive proxy statement with the SEC.[10] *See* ECF Nos. 1, 2.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "To obtain a preliminary injunction a plaintiff must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his

---

[9] Axon's existing policy concerning political contributions "requires compliance with applicable laws and prior written approval by the Company's legal department (and, where required, the Board)." ECF No. 2-4, at 3.

[10] April 16, 2026 is the soonest that Axon can file a definitive proxy statement and form of proxy because Axon filed its letter to the SEC on January 26. *See* 17 C.F.R. § 240.14a-8(j)(1) ("If the company intends to exclude a proposal from its proxy materials, it must file its reasons with the Commission no later than 80 calendar days before it files its definitive proxy statement and form of proxy with the Commission.").

favor, and [4] that an injunction is in the public interest." *MediNatura, Inc. v. FDA*, 998 F.3d 931, 940 (D.C. Cir. 2021) (internal quotation omitted).  The movant "has the burden to show that all four factors, taken together, weigh in favor of the injunction." *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009); *see also Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987) (for a permanent injunction, the plaintiff must show actual success, instead of just a likelihood of success on the merits).

Axon intends to move to dismiss the complaint.  Axon agrees with Plaintiff, however, that the issues can be decided based on the "record before the agency."  (Mot. at 15.)  Thus, the issues can be decided following a preliminary injunction hearing.

## ARGUMENT

### I.    Axon Lawfully Excluded the Proposal Under Rule 14a-8(i)(7) on Micromanagement Grounds.

Plaintiff's single-count complaint rests on an implied private right of action to enforce its shareholder proxy rights under Section 14(a) of the Exchange Act and Rule 14a-8.  *See* ECF No. 1, at 7-8.  The D.C. Circuit has recognized the existence of an implied private right of action. *Roosevelt v. E.I. DuPont de Nemours & Co.*, 958 F.2d 416, 419-25 (D.C. Cir. 1992).[11] Nevertheless, the D.C. Circuit in that decision affirmed the judgment of the district court excluding the shareholder proposal under the ordinary business exception of Rule 14a-8(i)(7).  *See id.* at 425-29.

---

[11] In *Roosevelt*, the D.C. Circuit relied on the approach to finding an implied right of action in *J.I. Case Co. v. Borak*, 377 U.S. 426 (1964), which the U.S. Supreme Court has since deemed "abandoned" in *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001).  The D.C. Circuit has not revisited *Roosevelt*'s holding following *Alexander*.  Axon submits that an implied private right of action for Rule 14a-8 is no longer viable under current Supreme Court jurisprudence.

The Court should dismiss Plaintiff's complaint with prejudice—and deny its Motion for Injunctive Relief—because the well-established legal interpretation of Rule 14a-8(i)(7) permits exclusion of its Proposal.     *First*, the Court owes deference to the SEC's authoritative interpretations of its own regulations under *Auer v. Robbins*, 519 U.S. 452 (1997), and/or *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).     *Second*, with due deference applied, the Proposal satisfies the SEC's standard for what constitutes micromanagement, and Axon's exclusion of the Proposal is therefore lawful.

### A.     The Court Owes Deference to the SEC's Interpretation of "Ordinary Business Operations" in Rule 14a-8(i)(7).

The SEC has provided guidance as to the meaning of its Rule 14a-8 in the form of Commission releases, such as the 1976 and 1998 Releases, and Staff Legal Bulletins from the Division of Corporation Finance, such as Staff Legal Bulletin 14M.  Both types of guidance are entitled to deference.

*Auer* deference requires courts to defer to agencies' reasonable interpretations of their own regulations if the regulations are "genuinely ambiguous."  *Kisor v. Wilkie*, 588 U.S. 558, 574-75 (2019) (citing *Auer*, 519 U.S. 452); *see also GMS Mine Repair v. Fed. Mine Safety & Health Rev. Comm'n*, 72 F.4th 1314, 1320 (D.C. Cir. 2023).  The doctrine is "rooted in a presumption about congressional intent" that "Congress would generally want the agency to play the primary role in resolving regulatory ambiguities."  *Kisor*, 588 U.S. at 569.  Under *Auer*, "the agency's interpretation 'becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.'"  *Kisor*, 588 U.S. at 568 (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 425 (1945)).  Deference is appropriate when the agency's interpretation is "one actually made by

the agency," "in some way implicate[s] its substantive expertise," and "reflect[s] fair and considered judgment." *Id.* at 577-79 (internal quotation omitted).[12]

The SEC's interpretation of "ordinary business operations" in Rule 14a-8(i)(7) satisfies these criteria. The scope and meaning of that phrase in the regulation is not well specified. *See Grimes v. Centerior Energy Corp.*, 909 F.2d 529, 531 (D.C. Cir. 1990) ("[T]he phrase 'ordinary business operations' . . . has no precise definition.") (interpreting what was then Rule 14a-8(c)(7), now Rule 14a-8(i)(7)); *see also* 1998 Release, 63 Fed. Reg. at 29,107 (explaining that "the legal term-of-art 'ordinary business' might be confusing to some shareholders and companies" and "refers to matters that are not necessarily 'ordinary' in the common meaning of the word"). And the SEC's interpretation of the ordinary business exclusion is reasonable. *See GMS Mine Repair*, 72 F.4th at 1323 (interpretation is reasonable if it "falls within the 'zone of ambiguity'" created by the text of the regulation (quoting *Kisor*, 588 U.S. at 576)).

The SEC's 1976 and 1998 Releases satisfy the *Kisor* criteria for *Auer* deference. The SEC adopted the Releases after notice and comment. They were issued by the Commission, "reflect the past experience of the Commission and its staff in administering Rule 14a-8," and were adopted after "careful consideration" of public comment. SEC, *Adoption of Amendments Relating to Proposals by Security Holders*, Exchange Act Release No. 12999, 41 Fed. Reg. 52,994, 52,994 (Nov. 22, 1976) ("1976 Release"); *see also* 1998 Release, 63 Fed. Reg. at 29,108. Accordingly,

---

[12] In *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the Supreme Court overruled the *Chevron* doctrine for deference to administrative agency interpretations of statutes. But *Auer* deference to an agency's interpretation of its own rules is fundamentally different; in that context, agencies act within a legislative grant of authority to issue rules. *See Kisor*, 588 U.S. at 569-70 (noting that *Auer* deference is rooted in the presumption that "the power authoritatively to interpret its own regulations is a component of the agency's delegated lawmaking powers" (internal quotation omitted)). Accordingly, *Auer* and *Kisor* remain good law. *See United States v. Prather*, 138 F.4th 963, 974-75 (6th Cir. 2025); *United States v. James*, 135 F.4th 1329, 1334 n.1 (11th Cir. 2025).

courts grant *Auer* deference to the SEC's Releases concerning the scope of the "ordinary business" exclusion in Rule 14a-8.  *See Trinity Wall St.*, 792 F.3d at 337 n.9; *Tosdal v. Nw. Corp.*, 440 F. Supp. 3d 1186, 1194 (D. Mont. 2020).

Deference to the Staff Legal Bulletins is also appropriate.  Even if an agency interpretation is not entitled to *Auer* deference, courts must consider whether *Skidmore* deference is warranted. *See Kisor*, 588 U.S. at 573.[13]  *Skidmore* deference recognizes that agency interpretations may offer "experience and informed judgment to which courts and litigants may properly resort for guidance" and gives weight to those interpretations according to "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade."  *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see also Orton Motor, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 884 F.3d 1205, 1211 (D.C. Cir. 2018) (*Skidmore* deference afforded to guidance documents issued by Center for Tobacco Products within HHS); *Union Neighbors United, Inc. v. Jewell*, 831 F.3d 564, 580-82 (D.C. Cir. 2016) (applying *Skidmore* deference to U.S. Fish and Wildlife Service's interpretation set forth in agency handbook).[14]

The Court should afford the Staff Legal Bulletins significant weight.  The Staff Legal Bulletins set forth a thorough and considered analysis of Rule 14a-8 and were issued by the SEC's

---

[13] In *Loper Bright*, the Supreme Court expressly preserved *Skidmore* deference.  *See* 603 U.S. at 402.

[14] The Staff Legal Bulletins note that they "represent the views of the Division of Corporation Finance" and are "not a rule, regulation or statement" of the Commission, which has "neither approved nor disapproved its content."  Staff Legal Bulletin 14J; Staff Legal Bulletin 14K; Staff Legal Bulletin 14M.  This language does not, however, counsel against affording the Staff Legal Bulletins *Skidmore* deference, as the Staff Legal Bulletins are no different in this respect from the guidance documents in *Orton Motor* or the handbook in *Union Neighbors*, to which the D.C. Circuit extended *Skidmore* deference.

Division of Corporation Finance as a whole, based on the Division's experience in overseeing the application of Rule 14a-8. Staff Legal Bulletin 14M, for example, which reinstated Staff Legal Bulletins 14J and 14K, noted that it was adopted "[b]ased on a review of Staff Legal Bulletin No. 14L and the staff's experience applying the guidance contained in it, and after re-examining the Commission's statements on the matters addressed in that bulletin." Staff Legal Bulletin 14M § A. The considered views of the Division on how to apply Rule 14a-8 hold weighty "power to persuade."[15] *See Skidmore*, 323 U.S. at 140.

## B.    Plaintiff's Proposal Satisfies the SEC's Standard for Micromanagement.

Under the standard set forth in the SEC Releases and Staff Legal Bulletins, this case presents a straightforward application of the ordinary business exclusion for micromanagement. The Proposal easily meets that standard for exclusion.

To begin, the Proposal requires "intricate detail" and "seeks to impose specific . . . methods for implementing complex policies." 1998 Release, 63 Fed. Reg. at 29,108; *see also* Staff Legal Bulletin 14J § C.2. Specifically, the Proposal's first paragraph requires a report disclosing corporate policies relating to 21 different kinds of direct and indirect electoral contributions and expenditures made with corporate funds and assets, spanning the federal, state, and local levels:

---

[15] In contrast, it is well established that SEC no-action letters, which are decided by individual members of the Division staff and are otherwise nonbinding, one-off determinations on individual facts, are entitled to no deference beyond whatever persuasive value they may have. *See, e.g.*, *Gryl ex rel. Shire Pharms. Grp. PLC v. Shire Pharms. Grp. PLC*, 298 F.3d 136, 145 (2d Cir. 2002); *see also Roosevelt*, 958 F.2d at 427 n.19. The Court should give far greater weight to the Staff Legal Bulletins, which reflect the entire Division's reasoned views.

| Table 1: Information Required by Paragraph One of the Proposal | |
|---|---|
| **Policies & Procedures Governing:** | 1. Direct Contributions & Expenditures: Political Candidates (Federal) |
| | 2. Direct Contributions & Expenditures: Political Candidates (State) |
| | 3. Direct Contributions & Expenditures: Political Candidates (Local) |
| | 4. Direct Contributions & Expenditures: Political Parties |
| | 5. Direct Contributions & Expenditures: Political Organizations |
| | 6. Direct Contributions & Expenditures: Independent Expenditures (Federal) |
| | 7. Direct Contributions & Expenditures: Independent Expenditures (State) |
| | 8. Direct Contributions & Expenditures: Independent Expenditures (Local) |
| | 9. Direct Contributions & Expenditures: All Other Electoral Spending |
| | 10. Indirect Contributions & Expenditures: Political Candidates (Federal) |
| | 11. Indirect Contributions & Expenditures: Political Candidates (State) |
| | 12. Indirect Contributions & Expenditures: Political Candidates (Local) |
| | 13. Indirect Contributions & Expenditures: Political Parties |
| | 14. Indirect Contributions & Expenditures: Political Organizations |
| | 15. Indirect Contributions & Expenditures: Independent Expenditures (Federal) |
| | 16. Indirect Contributions & Expenditures: Independent Expenditures (State) |
| | 17. Indirect Contributions & Expenditures: Independent Expenditures (Local) |
| | 18. Indirect Contributions & Expenditures: All Other Electoral Spending |
| | 19. Electioneering Communications (Federal) |
| | 20. Electioneering Communications (State) |
| | 21. Electioneering Communications (Local) |

*See* ECF No. 2-4, at 11; ECF No. 2-3, at 2.  The second paragraph requires an even lengthier itemized list of monetary and nonmonetary contributions and expenditures, again both direct and indirect, including the name of and amount given to each recipient.  *See* ECF No. 2-4, at 11-12; ECF No. 2-3, at 2.  In other words, the Proposal would require Axon to collect, compile, and publish a sprawling matrix of political spending information—monetary *and* nonmonetary; contributions *and* expenditures; funds *and* assets; direct *and* indirect; recipient *and* amount; federal, state *and* local.  That fails the ban on micromanagement.  To top it off, the Proposal also requests that all of that information be updated annually—yet another reason to exclude the Proposal on micromanagement grounds.  *See* 1998 Release, 63 Fed. Reg. at 29,108 (proposals that "impose specific time-frames . . . for implementing complex policies" constitute micromanagement); *see also* Staff Legal Bulletin 14J § C.2.

The indirect contributions requirement exacerbates the problems with the Proposal, which would mandate disclosure at a very granular level. The Proposal states that it encompasses payments to, at the very least, trade associations, Super PACs, 527 committees and 501(c)(4) social welfare organizations. *See* ECF No. 2-3, at 2. That kind of derivative disclosure obligation would put a heavy investigative and policy burden on Axon. Axon would need not only to disclose its own contributions (for which it keeps internal records), but also to seek information from all of its contribution recipients to know whether it must disclose indirect contributions as well. This derivative disclosure obligation would far exceed disclosure obligations required by campaign finance law and would impose considerable burdens on Axon to collect information from other organizations.

The Proposal not only demands an impermissible level of "intricate detail" but also deprives Axon's management of the flexibility to define the actual information collected, consistent with a workable control framework of its own choosing. *See* Staff Legal Bulletin 14J § C.2; Staff Legal Bulletin 14K § B.4. The Proposal "prescribes specific actions that the company's management or the board must undertake without affording them sufficient flexibility or discretion in addressing the complex matter presented by the proposal." Staff Legal Bulletin 14K § B.4. It is unrefuted in the record that Axon "already maintains and enforces a policy framework governing political contributions that requires compliance with applicable laws and prior written approval by the Company's legal department (and, where required, the Board)." ECF No. 2-4, at 3. Plaintiff's Proposal would override that policy and supplant the discretion of Axon's management and board in determining what serves the corporation's best interests. And because it is so expansive, the Proposal admits of few if any exceptions; it effectively "prohibits any such adjustments without regard to specific circumstances or the possibility of reasonable exceptions."

Staff Legal Bulletin 14K § B.4.  Leaving Axon's management and board with no discretion to exercise in the realm of political spending disclosures, the Proposal attempts to micromanage and should be excluded.

Moreover, the Proposal must be considered in its entirety and cannot be redrafted or revised at this stage.  Rule 14a-8 requires that each shareholder "may submit no more than one proposal . . . to a company for a particular shareholders' meeting."  17 C.F.R. § 240.14a-8(c).  The shareholder must submit the proposal at least 120 days before the date of the proxy statement, *id.* § 240.14a-8(e)(2), and no provision in Rule 14a-8 permits the revision of a proposal once submitted.[16]  Consequently, the SEC and its staff review shareholder proposals as an indivisible whole and decide whether the proposal may be included or excluded in its entirety.  *See Roosevelt*, 958 F.2d at 427 n.17 ("The Commission noted that, on occasions when it reviews a staff no-action determination under Rule 14a-8, it acts, as does the staff, on the proposal taken as a whole."); *Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, 821 F. Supp. 877, 885 (S.D.N.Y. 1993) (noting that SEC staff "evaluate a shareholder proposal as an indivisible whole; if one part of a multi-part proposal is excludable, the entire proposal is treated as excludable"); *see also* Staff Legal Bulletin 14K § B.4 ("[W]e look not only to the resolved clause but to the proposal in its entirety.").  Further, cases involving multi-part shareholder proposals have excluded the proposal in full rather than modifying the proposal or severing certain parts.  *See  Roosevelt*, 958 F.2d at 427-29 (evaluating each element of the proposal and ultimately excluding in full); *Apache*

---

[16] There are two minor exceptions, both inapplicable here.  First, the SEC may permit revision of "statements that are potentially false and misleading in contravention of Rule 14a-9."  *See* 17 C.F.R. § 240.14a-8(m)(3)(i).  Second, Staff Legal Bulletin 14F allows shareholders to revise a timely submitted proposal as long as the shareholder submits the revised proposal before the company's deadline for receiving proposals (which here has passed).  *See* SEC Staff Legal Bulletin No. 14F § D.1 (Oct. 18, 2011), https://www.sec.gov/rules-regulations/staff-guidance/staff-legal-bulletins/shareholder-proposals-staff-legal-bulletin-no-14f-cf.

*Corp. v. N.Y.C. Emps.' Ret. Sys.*, 621 F. Supp. 2d 444, 452 (S.D. Tex. 2008) (finding that certain parts of shareholders' proposal were excludable and therefore upholding exclusion of the proposal in full "because the Proposal must be read with all of its parts").[17]  And those rulings make good sense, as an implied right of action should not afford a remedy broader than the administrative regulation that implied it.  *Cf. Alexander v. Sandoval*, 532 U.S. 275, 287 (2001) (courts may not "ventur[e] beyond Congress's intent" when finding rights of action implied from statute).

That binary, all-or-nothing principle renders the Proposal's overbreadth fatal to Plaintiff's claim.  As mentioned earlier, the Proposal requests a matrix of political spending information—monetary *and* nonmonetary; contributions *and* expenditures; funds *and* assets; direct *and* indirect; recipient *and* amount; federal, state *and* local.   Take the Proposal's insistence on indirect contributions and expenditures, for example.   Plaintiff insisted in its letter to the SEC that "[d]isclosure of indirect political spending undertaken through trade associations, social welfare organizations, section 527 groups and other intermediaries is necessary for a full picture."  (ECF No. 2-5, at 7.)  Yet such a requirement would demand "intricate detail," "seek[] to impose specific . . . methods for implementing complex policies," and deprive Axon's leadership of "sufficient flexibility or discretion in addressing the complex matter" of political spending disclosures.  Staff

---

[17] The court in *Amalgamated Clothing* did tweak a shareholder request, but that aspect of the decision is readily distinguishable.  In that case, the court determined that the proposal "generally involves a significant policy consideration," but noted the possibility of a "literal reading of the Proposal" that could implicate "mundane matters of Wal-Mart's day-to-day business affairs."  *Amalgamated Clothing*, 821 F. Supp. at 891.  So, "not[ing] the practice of the SEC staff to revise a proposal . . . to correct minor defects," the court made minor changes to the text of the proposal to avoid the unintended expansive literal meaning.  *Id.* at 891-92.  In contrast, the defect here is far from minor.  Whereas the modification in *Amalgamated Clothing* was intended to prevent an unduly expansive literal interpretation of the proposal's ambiguous text, *see id.*, there is no such problem here with the text of the Proposal.  Plaintiff's Proposal must rise or fall with its full scope.

Legal Bulletin 14J § C.2 (quoting 1998 Release, 63 Fed. Reg. at 29,108); Staff Legal Bulletin 14K § B.4.[18]

Plaintiff focuses on the wrong question in arguing that "political spending is a matter of great importance that transcends ordinary business" and that the Proposal raises a "public policy issue . . . relating to corporate political spending." (*See* Mot. at 16-20.)  Indeed, that argument focuses incorrectly on the first consideration for exclusion under Rule 14a-8(i)(7)—the subject matter basis, which is not at issue.  *See* 1998 Release, 63 Fed. Reg. at 29,108 (a proposal may interfere with ordinary business operations if its subject matter focuses on "sufficiently significant social policy issues" that "transcend the day-to-day business matters" of the company).  Axon has made clear that it intends to exclude the Proposal *only* "because it seeks to micromanage the Company"—the second consideration of the ordinary business exclusion.  ECF No. 2-4, at 2.  Further, the two grounds for exclusion under Rule 14a-8(i)(7)—subject matter and micromanagement—are separate and independent.  *See* 1998 Release, 63 Fed. Reg. at 29,108; *see generally supra* Background § I.  Even assuming all of Plaintiff's arguments on substantial social policy to be true, "a proposal that may not be excludable under the first consideration [of subject matter] may be excludable under the second if it micromanages the company."  Staff Legal Bulletin

---

[18] Further, should Plaintiff request that the Court pick up its blue pencil and somehow modify the Proposal, the Court should decline to do so.  Substantive changes to the Proposal at this stage would be a brand new remedy that is unavailable before the SEC.  *See Roosevelt*, 958 F.2d at 427 n.17; *Amalgamated*, 821 F. Supp. at 885; *see also Apache*, 621 F. Supp. 2d at 452.  And Plaintiff has already represented on the record that the Proposal's overbreadth is its very point—for example, Plaintiff insisted that indirect spending disclosures were "necessary for a full picture."  (ECF No. 2-5, at 7.)  Plaintiff has taken its bite at the proxy-statement apple by advancing a sweeping proposal.  It may not ask for another.  *See* 17 C.F.R. § 240.14a-8(c) ("Each person may submit no more than one proposal, directly or indirectly, to a company for a particular shareholders' meeting.").

14J § C.2.  Accordingly, Plaintiff's singular focus on the subject-matter basis for exclusion—and the public policy issue—is misplaced.

Plaintiff's cited authorities suffer from the same fatal flaw.  Plaintiff fails to cite a single case finding that a company improperly sought to exclude a shareholder proposal on micromanagement grounds.  (*See* Mot. at 16-22.)  Plaintiff argues that the Proposal is "closer in analogy to the 'nuclear power plant' example" in the 1976 Release (Mot. at 17), but that was an example of the subject matter consideration, not the micromanagement consideration.  *See* 1976 Release, 41 Fed. Reg. at 52,998 ("[I]t seems apparent that the economic and safety considerations attendant to nuclear power plants are of such magnitude that a determination whether to construct one is not an 'ordinary' business matter.").  Plaintiff relies on the Third Circuit's decision in *Trinity Wall Street* (Mot. at 19-20), but again, at issue there was whether the subject matter of the shareholder proposal was excludable because it raised a substantial social policy.  *See* 792 F.3d at 351 ("We thus hold that, even if Trinity's proposal raises sufficiently significant social and corporate policy issues, those policies do not transcend the ordinary business operations of Wal-Mart.").  The Proposal here is akin instead to the detailed report to shareholders that the D.C. Circuit held in *Roosevelt* was properly excludable.  958 F.2d at 428-29.

Further, Plaintiff's assertion that the 1976 Release carved out political spending disclosures as exceptions to the ordinary business operations exclusion is inaccurate.  (*See* Mot. at 9.)  The 1976 Release discussed political contributions in the context of the "relevance" exclusion in Rule 14a-8(i)(5), not the ordinary business provision in Rule 14a-8(i)(7), as Plaintiff asserts.  *Compare* 1976 Release, 41 Fed. Reg. at 52,997 (discussing what was then subsection (c)(5), now subsection (i)(5)), *with* Mot. at 9 (claiming that "the Rule 14a-8 ordinary business provision was not intended to exclude proposals relating to political spending").

Plaintiff's other authorities have nothing to do with Rule 14a-8 at all. *See, e.g.*, *Citizens United v. FEC*, 558 U.S. 310, 370 (2010). This case has nothing to do with broader social questions such as whether the First Amendment permits limitations on political contributions by corporations. Moreover, Plaintiff and other Axon shareholders already have access to Axon's filings with the Federal Election Commission ("FEC"), which for federal election campaigns list the information requested by the second part of the Proposal. If shareholders are dissatisfied with Axon's political contributions, they can use "the procedures of corporate democracy" to elect a new board. *Citizens United*, 558 U.S. at 370 (quoting *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 794 (1978)); *Bellotti*, 435 U.S. at 794-95 (referring to shareholders' "power to elect the board of directors or to insist upon protective provisions in the corporation's charter" as "the procedures of corporate democracy").[19] In any event, it bears repeating that "a proposal that may not be excludable under the first consideration [of subject matter] may be excludable under the second if it micromanages the company." Staff Legal Bulletin 14J § C.2.

Plaintiff's other arguments similarly fail. *First*, Plaintiff argues that the micromanagement exclusion is somehow limited to "employment related" proposals "as explained by the SEC in its 1998 release." (*See* Mot. at 20.) That view is wholly unsupported. Nothing in the text of the 1998 Release limits micromanagement to the employment context. *See* 1998 Release, 63 Fed. Reg. at 29,108. Moreover, one of the micromanagement examples the Division provides in Staff Legal Bulletin 14K involved a proxy proposal seeking annual detailed reporting on greenhouse gas

---

[19] Plaintiff's suggestion (Mot. at 18) that the Supreme Court was referring to non-binding shareholder proposals under Rule 14a-8 misreads *Citizens United* and *Bellotti*, from which *Citizens United* drew the phrase "the procedures of corporate democracy." *Citizens United*, 558 U.S. at 370 (quoting *Bellotti*, 435 U.S. at 794).

emission targets, which obviously has nothing to do with employment proposals. *See* Staff Legal Bulletin 14K § B.4.

*Second*, Plaintiff argues that a political spending report should be easy enough to compile and that other companies publish comparable reports. (*See* Mot. at 2, 21.) But this, too, misconstrues the micromanagement standard. The SEC has rejected the view that shareholder proposals for reports are automatically included in proxy statements simply because they are reports rather than more substantive proposals. *See* SEC, *Amendments to Rule 14a-8 Under the Securities Exchange Act of 1934 Relating to Proposals by Security Holders*, Exchange Act Release No. 20091, 48 Fed. Reg. 38,218, 38,221 (Aug. 23, 1983) (declining to prioritize "form over substance"). Rather, "a proposal that seeks an intricately detailed study or report may be excluded on micromanagement grounds," like when "the substance of the report relates to the imposition or assumption of specific timeframes or methods for implementing complex policies." Staff Legal Bulletin 14J § C.2. As discussed above, that test is met here. And to the extent that Axon does not have written policies or procedures for any of the required 21 areas, Axon would be required to include descriptions of those policies and procedures in the annual report. The Proposal also requires that the report be sent to the Axon board or a committee thereof. *See* ECF No. 2-3, at 2. Further, Plaintiff asks Axon to mirror the disclosure policies of other companies (*see* Mot. at 21 n.16), but that argument shows the very issue with the Proposal—Plaintiff is supplanting its judgment for that of Axon's management and board and directing the company to implement a particularized disclosure policy.[20] *See* Staff Legal Bulletin 14K § B.4.

---

[20] That another company's management and board may have chosen voluntarily to make disclosures like the ones Plaintiff requests in the Proposal does not bear on whether the disclosures are excludable by companies, like Axon, on micromanagement grounds under Rule 14a-8(i)(7).

*Third*, contrary to Plaintiff's suggestion (*see* Mot. at 21), the weight of authority in relevant SEC no-action letters also supports Axon's position.  In *Air Products and Chemicals, Inc.*, the Division granted no-action relief to exclude a lobbying disclosure report that would have required "dozens of distinct pieces of information" and constrained company discretion.  2024 WL 4250617, at *1, *7 (Nov. 29, 2024).  Yet Plaintiff ignores *Air Products* entirely.  The no-action letters that Plaintiff does cite all suffer from the same flaw:  they predate Staff Legal Bulletins 14J, 14K and 14M and therefore did not apply the SEC's current guidance interpreting Rule 14a-8(i)(7)'s micromanagement exclusion.  *See EQT Corp.*, 2012 WL 6591778 (Jan. 23, 2013); *Bank of Am.*, 2012 WL 71855 (Feb. 29, 2012); *Am. Int'l Grp. (AIG)*, 2004 WL 346068 (Feb. 19, 2004); *Citigroup, Inc.*, 2004 WL 224478 (Jan. 27, 2004); *Chubb Corp.*, 2004 WL 224491 (Jan. 27, 2004).[21]  The Court should accordingly afford these no action letters no weight under the SEC's current guidance.

*Fourth*, Plaintiff's generalized invocations of corporate democracy cannot save its case. (*See* Mot. at 3-4, 18.)  It is true that "Congress intended by its enactment of section 14 . . . to give true vitality to the concept of corporate democracy." *Roosevelt*, 958 F.2d at 422.  Yet "it frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." *Rodriguez v. United States*, 480 U.S. 522, 526 (1987) (per curiam).  The grounds for exclusion—to protect companies from unnecessary and wasteful shareholder proposals—are just as important as the grounds for inclusion.  The SEC has crafted a

---

[21] *Air Products* was decided in November 2024, when Staff Legal Bulletin 14L was still in effect.  But even under Staff Legal Bulletin 14L's narrower standard for micromanagement, the Division still found *for* the corporation, lending further support for Axon's position here.  *See Air Products*, 2024 WL 4250617, at *1.  Nor does it matter that the proposal in *Air Products* involved political lobbying, rather than political contributions.  (*See* Mot. 13.)  This difference is irrelevant for the micromanagement exclusion in Rule 14a-8(i)(7), as the Proposal here is overly intrusive in its prescriptive detail to the same extent as that in *Air Products*.

careful, reticulated scheme to carry out its mandate from Congress, and Plaintiff has no basis to ask the Court to deviate from that scheme. *See* 1976 Release, 41 Fed. Reg. at 52,997 (evaluating whether the proposed "ordinary business operations" exception "would produce results that were more in accord with the concept of shareholder democracy underlying section 14(a)"); SEC Chair Mary Jo White, *The Importance of Independence* (Oct. 3, 2013), https://www.sec.gov/newsroom/speeches-statements/spch100113mjw (noting that "exerting societal pressure on companies to change behavior" is a laudable goal, but questioning the use of "federal securities laws and the SEC's powers of mandatory disclosure" and stating that the SEC may not "ignore a Congressional mandate"). The Court should accordingly deny Plaintiff's Motion for Injunctive Relief and dismiss the complaint with prejudice.

## II.    The Remaining Factors for Injunctive Relief Weigh Against an Injunction.

"The 'failure to show a likelihood of success on the merits alone is sufficient' to deny a preliminary injunction." *Spicer v. Biden*, 575 F. Supp. 3d 93, 100 (D.D.C. 2021) (citation omitted). But even if the merits of Plaintiff's case were closer, Plaintiff has failed to establish its burden of showing that the remaining equitable factors are resolved in its favor.

### A.    Plaintiff Will Not Suffer Irreparable Harm.

Irreparable harm "must be both certain and great; it must be actual and not theoretical." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). The injury must also be "beyond remediation"; if the asserted harm can be mitigated or redressed by corrective relief by another means, the plaintiff has not suffered irreparable injury. *Id.* at 297-98.

Plaintiff fails to carry its burden of establishing irreparable harm. Plaintiff rests its entire contention on a single point—that, absent an injunction, it would be unable to exercise its right to submit a proposal to Axon shareholders for another year. (*See* Mot. at 22-23.) Plaintiff cites to

*N.Y.C. Employees' Retirement System v. Dole Food Co.*, which found (without further reasoning) that the exclusion of a proposal constitutes irreparable harm because the shareholder "would not be able to bring its proposal to [other] shareholders for another year."  795 F. Supp. 95, 103 (S.D.N.Y.), *dismissed as moot*, 969 F.2d 1430 (2d Cir. 1992).  But that argument does not hold true here.  There are two other available means for Plaintiff to bring a proposal to Axon's annual meeting.  Shareholders may either submit a proposal by attending Axon's annual meeting in person or may pay to issue a separate proxy statement.[22]  *See Trinity Wall St.*, 792 F.3d at 335-36.  Indeed, "[w]hile we all have a right to get on our soapboxes, we have no right to force others to pay for them."[23]  And if the Proposal were one that enjoyed support from numerous shareholders, Plaintiff could join with others and split the cost of sponsoring the separate proxy statement.[24]  Plaintiff addresses none of these possibilities in its briefing.

Nor has Plaintiff explained why the imminent harm will be "great" in magnitude.  Axon's corporate political spending is publicly available through the FEC and relevant state and local campaign finance agencies.  The availability of this information serves to substantially mitigate any specter of harm resulting from the Proposal's exclusion from the proxy materials.  *See Sea*

---

[22] This option was available to Plaintiff as of the filing of the Motion and this opposition brief.  *See* Axon Enters., Inc., 2025 Proxy Statement 68 (Apr. 16, 2025), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001069183/000106918325000055/axon-20250416.htm (noting that "[s]hareholders may bring business before [Axon's 2026] annual meeting of shareholders that is not submitted for inclusion in the Company's proxy materials" by delivering notice of the proposal between January 29 and February 28, 2026).

[23] Commissioner Elad L. Roisman, *Statement on Procedural Requirements and Resubmission Thresholds under Exchange Act Rule 14a-8* (Sept. 23, 2020), https://www.sec.gov/newsroom/speeches-statements/roisman-14a8-2020-09-23.

[24] Plaintiff may also express itself through the myriad other ways shareholders can show disagreement with a board, such as by issuing press releases or voting against directors with whom they disagree.

*Containers Ltd. v. Stena AB*, 890 F.2d 1205, 1211 (D.C. Cir. 1989) (denying preliminary injunction motion because, although plaintiff claimed that shareholders were "forced to make investment decisions without full and accurate disclosure of material information" that defendants were acting as a "group," the defendants' "joint filing served substantially to mitigate, if it did not altogether eliminate, the harm alleged").

> ## B.    The Balance of Equities Weighs in Axon's Favor.

Next is the balance of equities, which "weighs the harm to [the plaintiff] if there is no injunction against the harm to the [defendant] if there is." *E.M. v. Shady Grove Reprod. Sci. Ctr. P.C.*, 2020 WL 7264048, at \*5 (D.D.C. Dec. 10, 2020) (quoting *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016)).

Plaintiff does not carry its burden to show that the harm it would suffer if the Proposal is excluded from Axon's proxy statement would outweigh the harm inflicted on Axon if Plaintiff is permitted to usurp Axon's management and board and force the burdensome collection and disclosure of information contemplated in the Proposal.  Plaintiff claims that exclusion would result in the forfeiture of its shareholder rights, but admits those rights are cabined by Axon's own legal right under Rule 14a-8 to exclude proposals that invade the discretion of its management and board to make decisions in the best interests of the company.  (Mot. at 24.)  And Plaintiff does not explain why it cannot avail itself of other methods of introducing proposals, *see supra* § II.A, or why the easy accessibility of information on Axon's political spending from public FEC filings does not counterbalance any harm Plaintiff may face if the Court does not issue an injunction. These factors tip the balance of equities in Axon's favor.

> ## C.    The Public Interest Does Not Support an Injunction.

The public interest prong also cuts against injunctive relief.  "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing

the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). "The view of 'Congress, the elected representatives of the entire nation,' are 'another sense by which the public interest should be gauged." *Nat'l Ass'n of Mfrs. v. Taylor*, 549 F. Supp. 2d 68, 77 (D.D.C. 2008) (quoting *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985)).

Plaintiff's assertions that its interest in "fair corporate suffrage" weighs in favor of granting an injunction lack merit. (*See* Mot. at 25.) What Plaintiff seeks here is not fair corporate suffrage, but rather the freedom to intrude on minute and complicated details of corporate governance to address policies Plaintiff deems important, with no heed to the micromanagement concerns the SEC set out in its 1998 Release. 1998 Release, 63 Fed. Reg. at 29,108; *see Taylor*, 549 F. Supp. 2d at 77. Applying Plaintiff's expansive reading of the ordinary business operations exclusion here would be tantamount to a categorical carveout permitting all proposals related to annual political-spending disclosures, no matter the level of micromanagement. That does not serve the public interest in fair corporate suffrage and runs contrary to what the SEC intended when promulgating its regulations and releases. *See* Staff Legal Bulletin 14J § C.2 (proposal may be excluded on micromanagement grounds, even if it would not be excludable on subject matter grounds); *see also Taylor*, 549 F. Supp. 2d at 77.

Further, Plaintiff's suggestion that more disclosure is always in the public interest is contradicted by the SEC's own former chair, who expressed her worry about "the increasing 'quantity and complexity' of disclosure." *See* White, *The Importance of Independence*, *supra*

29

(noting the "unassailable points that there are also costs associated with mandatory disclosure and 'too much disclosure can be counterproductive'" (citation omitted)).[25]

On the other hand, granting an injunction against Axon would disserve Axon's and other companies' interest in protecting themselves against micromanagement, which diverts funds away from activities that best serve company shareholders. This interest comports with the public policy considerations the SEC balanced in issuing its interpretation of its regulations. *See* Staff Legal Bulletin 14J § C.2. And as the SEC has explained, "the costs of processing, analyzing, and voting on the proponent's proposal largely are borne by the company and its shareholders. Accordingly, the mechanism for shareholder-proponents to require inclusion of their proposals in companies' proxy materials is not without limits." 2020 Release, 85 Fed. Reg. at 70,240; *see also id.* at 70,264 (noting that "shareholder proposals impose direct and opportunity costs on shareholders and indirect costs on shareholders through their ownership in companies"). The interest of shareholders in strong, well-functioning public markets is better served if shareholder meetings are focused on director elections and significant corporate matters. *See* Atkins, *Keynote Address*, *supra* note 6. Thus, the public interest also counsels in favor of denying Plaintiff's Motion for Injunctive Relief.

---

[25] In addition, expanding the ambit of permissible shareholder proposals may open the floodgates to proposals with opposing views and subject companies to "competing proposals from both sides of the ideological spectrum." *See, e.g.*, Matteo Tonello, *The Evolving Landscape of DEI Shareholder Proposals*, Harv. L. Sch. F. on Corp. Gov. (Apr. 25, 2025), https://corpgov.law.harvard.edu/2025/04/25/the-evolving-landscape-of-dei-shareholder-proposals/ (noting a "surge[]" in proposals advocating against diversity, equity and inclusion policies as a share of all DEI-related proposals).

## CONCLUSION

For the reasons set forth herein, Axon respectfully requests that this Court deny Plaintiff's

Motion for Injunctive Relief and dismiss Plaintiff's complaint with prejudice.

Dated this 25th day of February, 2026.

/s/ Jeffrey A. Rosen
Jeffrey A. Rosen (D.C. Bar 367245)
Cravath, Swaine & Moore LLP
1601 K Street NW
Washington, D.C. 20006
Tel: (202) 869-7700
Email: jrosen@cravath.com

Antony L. Ryan (*pro hac vice pending*)
Lauren M. Rosenberg (*pro hac vice pending*)
Cravath, Swaine & Moore LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel: (212) 474-1000
Email: aryan@cravath.com
Email: lrosenberg@cravath.com

*Attorneys for Axon Enterprise, Inc.*